UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW GAMING SYSTEMS, INC., | No.  2:11-CV-00627-MCE-AC |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Through this action, Plaintiff New Gaming Systems, Inc. ("New Gaming") seeks to have the United States of America ("the United States") refund a tax penalty assessed by the Internal Revenue Service ("IRS") in the amount of $93,892.75 for the taxable year ending March 31, 1999,[1] pursuant to 26 U.S.C. § 7422.

On April 18, 2013, the United States moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that the undisputed facts establish New Gaming's estimate of the tax owed for the 1998 taxable year was unreasonable, and therefore New Gaming is not entitled to a refund of the $93,892.75 late filing penalty assessed in 2004.[2]  Def.'s Mot. Summ. J., Apr. 18, 2013, ECF No. 24.

---

[1] Also referred to as "the 1998 taxable year."

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

1    New Gaming filed a timely opposition to the motion.  Pl.'s Opp'n, May 16, 2013, ECF

2    No. 28.  Thereafter, New Gaming filed a cross-motion for summary judgment.  New

3    Gaming argues that even if its tax estimate for the 1999 taxable year was unreasonable,

4    the undisputed facts establish that New Gaming reasonably relied on the advice of New

5    Gaming's Certified Public Accountant ("CPA") John Bauer in paying the estimated tax,

6    entitling New Gaming to summary judgment and a refund of the tax penalty.  Pl.'s Cross-

7    Mot. Summ. J., May 16, 2013, ECF No. 29.  The United States timely opposed the

8    motion.  Def.'s Opp'n, June 6, 2013, ECF No. 31.

9         Subsequently, the United States sought leave to file supplemental briefing on

10    certain evidence which New Gaming raised for the first time in its Reply to the United

11    States' Opposition to Plaintiff's Cross-Motion for Summary Judgment.   Mot.

12    Supplement, June 27, 2013, ECF No. 35.

13         For the reasons set forth below, the United States' Motion for Supplemental

14    Briefing is granted; the United States' Motion for Summary Judgment is denied; and New

15    Gaming's Cross-Motion for Summary Judgment is denied.[3]

16

17                              **BACKGROUND**

18

19         New Gaming Systems, Inc. builds and leases videogaming machines to Indian

20    Tribes.  Freels Dep. at 9-10, ECF No. 24-25.  These gaming machines are often built by

21    New Gaming but utilize software generated and sold by other companies.  Freels Dep. at

22    18.  In 1998, New Gaming received approximately $4,824,823.49 from its clients,

23    according to the company's QuickBooks software, with over $3,000,000 coming from

24    lease commissions.  Freels Dep. at 12, 29; Ex. 12 at 9, ECF No. 24-16; Ex. 14 at 28,

25    ECF No. 24-19.  During the taxable year ending March 31, 1999, New Gaming also sold

26    $73,829.19 in parts.  Freels Dep. at 30; Ex. 14 at 30, ECF No. X.

27

28    _____
      [3] Because oral argument will not be of material assistance, the Court orders these matters
      submitted on the briefs.  E.D. Cal. Local R. 230(g).

                              2

1     New Gaming typically received as a commission a percentage of the income

2   generated by a particular gaming machine leased to a tribal casino.  Freels Dep. at

3   13-14.  This commission could be up to thirty percent.  Id.  During the lease period, New

4   Gaming provided technical support, software upgrades, and sometimes replaced

5   defective or broken machines.  Id. at 14-15.  At the end of a lease, a gaming machine

6   would be relocated as part of a new lease or upgraded.  Id. at 15.  During 1998, New

7   Gaming held some lease contracts with lease terms greater than two years and as long

8   as five years.  Id. at 17; Bauer Dep. at 22-23, ECF No. 24-24; Reidenbach Dep. at 20,

9   ECF No. 24-27.

10     In 1998 and 1999, New Gaming had a bookkeeper named Heather Davidson.[4]

11   Freels Dep. at 19; Reidenbach Dep. at 6-7, 8.  New Gaming also had a CPA, John F.

12   Bauer, on retainer at that time.  Freels Dep. at 36-37; Bauer Dep. at 7-8.  Bauer worked

13   at New Gaming from approximately 1993 to 2001.  Bauer Dep. at 7-8, 11.  Bauer

14   considered New Gaming a major client, inasmuch as it accounted for some twenty to

15   twenty-five percent of his practice's income.  Id. at 8, 9.  Bauer's employee, Laurie

16   Walker, also had bookkeeping responsibilities for New Gaming.  Freels Dep. at 19.

17     The bookkeepers used Quickbooks software to enter invoices and payments.

18   Freels Dep. at 19.  Reidenbach or Walker frequently entered items into the Quickbooks

19   General Ledger at New Gaming.  Id. at 28; Reidenbach Dep. at 9, 10; see also Ex. 14.

20   Reidenbach entered invoices and payments into Quickbooks on the day they were sent

21   or received.  Reidenbach Dep. at 11, 21-22.  The General Ledger was then used to

22   generate a Profit and Loss Statement.  Freels Dep. at 28; Reidenbach Dep. at 10.

23   Certain expenses could be classified in the QuickBooks software based on the "Chart of

24   Accounts."  Ex. 17, ECF No. 24-22.  Reidenbach provided "QuickBooks data to [Bauer]

25   maybe once a year for tax compliance."  Bauer Dep. at 10.  New Gaming was a cash-

26   basis taxpayer but the accounting system used by New Gaming at the time was on an

27   accrual-basis.  Brown Dep. at 11, 14, ECF No. 24-28.

28   _____
          [4] Now Heather Reidenbach.

3

1      Several New Gaming employees held corporate credit cards, including Kevin

2   Freels, New Gaming's President; Jack Freels, the company's founder and Kevin's father;

3   and Don Freels, a salesman and Kevin's brother.  Freels Dep. at 8, 20, 24-25.  Some of

4   the charges on these credit cards were for meals and entertainment.  Id. at 25-26.

5   However, on the General Ledger, only $1,467.56 was categorized as "Meals and

6   Entertainment" for the 1998 taxable year, which Kevin Freels described as seeming

7   "extremely low."  Id. at 34-35; Ex. 14 at 66, ECF No. 24-19.  New Gaming's General

8   Ledger listed total travel expenses of $534,097.67 for that period, and included many

9   payments to the corporate credit card bills.  Freels Dep. at 36; Ex. 14 at 96, ECF

10  No. 24-19.  Reidenbach deferred to the accountant to classify the tax effect of any

11  personal expenses charged to New Gaming's credit cards.  Reidenbach Dep. at 17-18.

12      New Gaming's Application for Automatic Extension of Time to File

13      On June 7, 1999, New Gaming paid $100,000.00 to the IRS and submitted Form

14  7004, Application for Automatic Extension of Time to File Corporation Income Tax

15  Return, for the tax year ending March 31, 1999.  Freels Dep. at 41, 31; Ex. 2 at 2-3, ECF

16  No. 24-6.  New Gaming "always filed extensions."  Freels Dep. at 41; see also Bauer

17  Dep. at 12.  Kevin Freels signed both the extension request and the check for

18  $100,000.00.  Freels Dep. at 41-42; Ex. 2 at 2-3.  However, Kevin Freels did not recall

19  having a discussion with anyone regarding how the estimated tax of $100,000.00 was

20  calculated.  Freels Dep. at 42-43.

21      While Bauer recalled recommending a payment of $100,000.00 with the

22  extension request, Bauer Dep. at 12-13, he could not recall how he arrived at the

23  $100,000.00 estimate, nor could he recall making any calculations to arrive at that

24  amount, id. at 14, 15.  Bauer "didn't look that closely at it to ascertain whether there were

25  specific documents that were needed. . . . [He] had a profit and loss and possibly a

26  balance sheet produced from [New Gaming's] accounting system that represented

27  activity and the numbers for that 12-month period."  Id. at 13-14.

28  ///

1   Bauer could not recall whether he went beyond the profit and loss statement to

2   determine whether the items reported in the statement had been correctly labeled in the

3   accounting software as deductible expenses.  Id. at 26-27.  However, New Gaming did

4   not make the extension request because documents were unavailable to Bauer at that

5   time, Bauer Dep. at 13, and New Gaming had no policy preventing its CPAs from

6   accessing its financial books and records, Freels Dep. at 40.

7         Reidenbach does not recall Bauer requesting any documents from New Gaming

8   to prepare the tax return for the period ending March 31, 1999.  Reidenbach Dep. at 12.

9   Kevin Freels also has no specific recollection of Bauer requesting documents for that

10  year.  Freels Dep. at 40-41.  However, Bauer "would have access to all the books,

11  records, and Quickbooks data," and "as a general practice, there would be

12  correspondence between the front office staff and [Bauer] in preparation for the tax

13  returns . . . ."  Id.  Bauer does not recall looking into whether any particular deductible

14  expenses had been properly entered into Quickbooks.  Bauer Dep. at 21.

15        The previous year, in June 1998, New Gaming requested a similar extension of

16  time to file its Form 1120 for the period ending March 31, 1998, and paid $100,000.00

17  with that request as well.  Freels Dep. at 32-33; Ex. 14 at 36, 41, ECF No. 24-18.  Then,

18  according to the United States, New Gaming paid an additional $211,000.00 in federal

19  corporate income taxes when it filed its corporate tax return for that period.  Def.'s

20  Statement of Undisputed Facts ("SUF") at 5, ECF No. 24-1.  However, New Gaming

21  disputes this statement of fact, asserting that New Gaming made an estimated tax

22  payment of $211,000 in December 1998.  Pl.'s Statement of Disputed Facts ("SDF") at 7,

23  ECF No. 28-1.  Then, according to New Gaming, when it filed its Form 1120 on May 2,

24  1999, the tax reflected on the return was $379,615.00, and thus New Gaming included a

25  check in the amount of $80,624 with the return.[5]  Id. at 8.

26        [5] New Gaming includes extensive facts regarding a deal with Big Sandy tribal gaming operations, intended to demonstrate the reasonableness of New Gaming's Form 7004 and the estimated tax paid with

27  that form.  See Pl.'s SDF at 8, ECF No. 28-1.  According to New Gaming, when New Gaming made the estimated tax payment of $100,000, New Gaming believed it would recognize a substantial loss related to

28  the Big Sandy tribal gaming operations.  Freels Decl. at 2, ECF No. 28-3.  New Gaming had advanced

1       <u>New Gaming's U.S. Corporation Income Tax Return for Taxable Year 1999</u>

2              On its Form 1120 U.S. Corporation Income Tax Return for the tax period ending

3   March 31, 1999, New Gaming reported total income of $4,446,773.00 and total

4   deductions of $4,523,726.00, thus reporting no tax liability.  Ex. 3 at 2, ECF No. 24-7.

5   New Gaming filed this return on September 9, 2009.  Id.  Bauer prepared Form 1120

6   using the Profit and Loss statement and the balance sheet generated by Quickbooks.

7   Bauer Dep. at 17-18.  Bauer could not recall "other documents that [he] may have had in

8   [his] possession to use."  Id. at 18.

9              The deductions New Gaming claimed on Form 1120 for the 1998 taxable year

10  included $1,014,844.00 in depreciation, $719.00 in meals and entertainment deductions,

11  and $522,043.00 in travel expenses.  Ex. 3 at 6, 8, 12.  The depreciation deduction

12  included $797,550.00 in claimed gaming equipment depreciation, depreciated on a two-

13  year straight-line method.  Id. at 8.  New Gaming provided the following statement with

14  the return:

15              [a]s per [Internal Revenue Code, 26 U.S.C. §] 168(f)(1), the
            Taxpayer opted out of MACRS [Modified Accelerated Cost
16          Recovery System] and is instead depreciating its gaming
            equipment under an alternate method of depreciation based
17          upon obsolescence due to a combination of changes in
            technology, changes in law, market competition, income
18          generation from leasing equipment, and the average term of
            the Taxpayer's leases for such equipment.
19

20  Id. at 10.  Bauer testified "it was the taxpayer's belief that the life . . . of the equipment

21  was two years."  Bauer Dep. at 22.  At the time New Gaming filed this return, the IRS

22  had already challenged the two-year depreciation period claimed by New Gaming in

23  previous tax returns.  Id. at 19.

24             After filing Form 1120 for the period ending March 31, 1999, New Gaming began

25  to transition from CPA Bauer to CPA Michael Sides.  Freels Dep. at 37.

26  ///

27  funds to Big Sandy and had leased approximately 400 gaming machines and related software to the tribe.
    Id.  A disagreement arose, and after extensive discussions, New Gaming determined it would not be able
28  to recover the funds it had advanced, and would recognize a loss in the 1997 taxable year.  Id.

1    New Gaming originally retained Sides to review financial statements for the purpose of

2    obtaining financing.  Id. at 38.  Sides also handled IRS audits of New Gaming's prior tax

3    returns.  Id.

4            New Gaming's Amended Tax Return

5            New Gaming later determined that it should prepare an amended income tax

6    return for the period ending March 31, 1999.  Freels Dep. at 44.  Sides discovered "a

7    series of things missed in the tax return," including missing income totaling $601,127.00.

8    Id. at 44-45; Sides Dep. at 12, ECF No. 24-26.  Freels recalled that Sides expressed

9    surprise, saying, "[h]ow the hell was that missed?"  Freels Dep. at 44.  Sides had the

10   same access to New Gaming's paperwork as Bauer.  Id. at 46.

11           Sides determined that revenue recorded in the taxable 1999 year should have

12   been applied to the taxable 1998 year.  Sides Dep. at 10-11.  Sides provided this

13   information to New Gaming, id. at 19, and recommended that Bauer amend the tax

14   return for the period ending March 31, 1999, id. at 10-11.  Sides also questioned Bauer's

15   use of a two-year depreciation period.  Id. at 9, 14.

16           An amended corporate income tax return was prepared for New Gaming for the

17   tax year ending March 31, 1999, listing an additional $601,127.00 in income.  Ex. 4 at 3,

18   ECF No. 24-8 at 3.  This change in income brought New Gaming from having a net

19   operating loss for the period ending March 31, 1999, to having taxable income of

20   $376,294.00.  Id. at 2.  This change resulted in a tax due of $127,940.00.  Id.  The return

21   also reduced the amount of depreciation claimed by $143,288, because New Gaming

22   sold some of the assets which it had depreciated during the tax period.  Sides Dep. at

23   14; Ex. 4 at 3.  Bauer signed the return on January 4, 2000, but the return was never

24   filed with the IRS.[6]  Bauer Dep. at 28-29.

25   ///

26   ///

---

[6] Both the United States and New Gaming cite to the Brown deposition as support for their position on this fact.  See Def.'s SUF at 7; Pl.'s SDF at 14.  However, neither the United States nor New Gaming provided the Court with the pages (20, 33, 34) of the Brown deposition to which they cite.

1        IRS Audits New Gaming for Taxable Year 1999

2        Beginning sometime in 2002, the IRS audited New Gaming's federal income tax

3    return for the year ending March 31, 1999.  See Freels Dep. at 47; Sides Dep. at 20.

4    Dennis Brown, a Revenue Agent, handled this audit.  Sides Dep. at 8.

5        Brown determined that New Gaming improperly deducted expenses for the home

6    care of Jack Freels' mother.  Freels Dep. at 49; Ex. 6 at 5, ECF No. 24-10.  Brown also

7    examined a sample of four months of corporate credit card statements.  Ex. 6.  From this

8    examination, Brown determined that 16% of the charges to those cards were not

9    deductible because they constituted personal expenses and gifts paid for by the

10   company, and 4% of the charges constituted amounts greater than the percentage

11   allowed for meals and entertainment.  Id.  New Gaming and the IRS agreed to use

12   Brown's sampling method for the sake of efficiency.  Freels Dep. at 51; Sides Dep. at 10.

13       An additional issue with New Gaming's tax return for the 1999 taxable year

14   stemmed from a deal with Next Generation Technology.  On January 29, 1999, New

15   Gaming paid $75,000 to buy a gaming contract from Next Generation Technology.

16   Ex. 13 at 45, ECF No. 24-17.  The gaming contract was between Next Generation

17   Technology and Cahuilla Creek Casino.  Freels Dep. at 33; Ex. 14 at 53, ECF No. 24-19.

18   Shortly after New Gaming purchased the contract, Cahuilla Creek Casino failed to honor

19   it.  Freels Dep. at 22-23.

20       The United States contends that New Gaming claimed the $75,000.00 purchase,

21   and a $25,000.00 contract between the same parties, as bad debts allegedly sustained

22   during the tax period ending March 31, 1999.  Ex. 3 at 5; Ex. 6 at 4.  However, New

23   Gaming asserts that because the casino did not honor the contracts, it claimed a loss

24   deduction in the amount of $100,000.  Sides Decl. at 2, ECF No. 28-4.  The $25,000

25   deduction was ultimately disallowed, because "[New Gaming Systems] never paid

26   $25,000 on a note payable to Next Generation Technologies."[7]  Ex. 6 at 4.

27       [7] While New Gaming states it "believe[s]" the $25,000 was actually paid, New Gaming cites to no
     evidence supporting this contention.  Accordingly, the fact that New Gaming did not pay the $25,000 is not
28   in dispute.

1  As for the $75,000 deduction, $2,500 was allowed as a deduction for the taxable year

2  1999, and $72,500 was allowed as a deduction in the taxable year 2000.  Sides Decl. at

3  2.  The United States asserts that "the $75,000 bad debt deduction was improper"

4  because Cahuilla Creek Casino apparently honored the contract through the close of the

5  tax period ending March 31, 1999, "although the IRS allowed New Gaming to take small

6  deductions for that period anyway."  Def.'s SUF at 9.

7  New Gaming ultimately agreed to the changes proposed on Form 4549-A, Income

8  Tax Examination Changes, prepared by Brown.  Ex. 6, ECF No. 24-10; Ex. 7, ECF

9  No. 24-11.  The total tax agreed to was $375,571.00.  Ex. 5, ECF No. 24-9.

10  <u>New Gaming's Late Filing Penalty</u>

11  On May 24, 2004, the IRS imposed a late filing penalty in the amount of

12  $93,892.75 pursuant to 26 U.S.C. § 6651.  Ex. 1 at 2, ECF No. 24-5.  The parties

13  dispute the reason the IRS imposed the penalty.  According to the United States, the

14  IRS invalidated New Gaming's request for an extension of time to file its corporate

15  income tax return for the period ending on March 31, 1999.  Def.'s SUF at 9.  According

16  to New Gaming the penalty was assessed because "there was no posting showing . . .

17  that the extension had ever been filed."  Brown Dep. at 12.

18  New Gaming paid the $93,892.75 penalty.  In 2006, New Gaming filed a Form

19  1120X Amended U.S. Corporation Income Tax Return, claiming a refund of the

20  $93,892.75 penalty.  Ex. 5; Sides Dep. at 23.

21

22  **STANDARD**

23

24  The Federal Rules of Civil Procedure provide for summary judgment when "the

25  movant shows that there is no genuine dispute as to any material fact and the movant is

26  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v.</u>

27  <u>Catrett</u>, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

28  dispose of factually unsupported claims or defenses.  <u>Celotex</u>, 477 U.S. at 325.

1    Rule 56 also allows a court to grant summary judgment on part of a claim or

2   defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

3   move for summary judgment, identifying each claim or defense—or the part of each

4   claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

5   Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

6   motion for partial summary judgment is the same as that which applies to a motion for

7   summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

8   Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

9   judgment standard to motion for summary adjudication).

10   In a summary judgment motion, the moving party always bears the initial

11   responsibility of informing the court of the basis for the motion and identifying the

12   portions in the record "which it believes demonstrate the absence of a genuine issue of

13   material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

14   responsibility, the burden then shifts to the opposing party to establish that a genuine

15   issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

16   Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

17   253, 288-89 (1968).

18   In attempting to establish the existence or non-existence of a genuine factual

19   dispute, the party must support its assertion by "citing to particular parts of materials in

20   the record, including depositions, documents, electronically stored information,

21   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

22   not establish the absence or presence of a genuine dispute, or that an adverse party

23   cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

24   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

25   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

26   Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

27   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

28   ///

1    The opposing party must also demonstrate that the dispute about a material fact "is

2    'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for

3    the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to

4    answer the preliminary question before the evidence is left to the jury of "not whether

5    there is literally no evidence, but whether there is any upon which a jury could properly

6    proceed to find a verdict for the party producing it, upon whom the onus of proof is

7    imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S.

8    442, 448 (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen the

9    moving party has carried its burden under Rule [56(a)], its opponent must do more than

10   simply show that there is some metaphysical doubt as to the material facts."  Matsushita,

11   475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not lead a

12   rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

13   Id. 87.

14        In resolving a summary judgment motion, the evidence of the opposing party is to

15   be believed, and all reasonable inferences that may be drawn from the facts placed

16   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

17   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

18   obligation to produce a factual predicate from which the inference may be drawn.

19   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

20   810 F.2d 898 (9th Cir. 1987).

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**ANALYSIS**

2

3

     **A.**     **Motion to Supplement**

4

5         In opposing Plaintiff's Cross-Motion for Summary Judgment, the United States

6    argues New Gaming did not raise its claim of reasonable reliance on the advice of its

7    accountant in the proceedings before the IRS, and thus the Court lacks jurisdiction to

8    hear this argument.  Def.'s Opp'n.  In its Reply, New Gaming responded to this argument

9    and submitted evidence to support its position.  Pl.'s Reply, ECF No. 33.  The United

10    States now contends that supplemental briefing is necessary "to further address

11    contentions raised by Plaintiff in its Reply In Support of Cross-Motion for Summary

12    Judgment regarding this Court's subject matter jurisdiction over the question of whether

13    Plaintiff may claim reasonable reliance on an accountant as a defense . . . ."  Def.'s Mot.

14    Supplement at 2.

15         A court may not consider evidence submitted for the first time in a reply to a

16    motion for summary judgment if the opposing party is not first given a chance to

17    respond.  Getz v. Boeing Co., 654 F.3d 852, 868 (9th Cir. 2011) (citing Provenz v. Miller,

18    102 F.3d 1478, 1483 (9th Cir. 1996) ("Here new evidence is presented in a reply to a

19    motion for summary judgment, the district court should not consider the new evidence

20    without giving the non-movant an opportunity to respond.")).

21         The Court must consider the United States' jurisdictional argument.  Accordingly,

22    the Court must also consider the evidence submitted by New Gaming in response to this

23    argument.  See Getz, 654 F.3d at 868.  As such, the United States' Motion to

24    Supplement is granted.  The Court will consider the supplemental briefing submitted by

25    the United States in ruling on New Gaming's Motion for Summary Judgment.

26    ///

27    ///

28    ///

1    **B.      The United States' Motion for Summary Judgment**

2

3          Corporations must file their federal income tax return by the fifteenth day of the

4    third month following the close of the corporation's taxable year.  26 U.S.C. § 6072(b).

5    However, a corporation filing an income tax return is generally allowed "an automatic

6    6-month extension of time to file its income tax return after the date prescribed for filing

7    the return."  26 C.F.R. § 1.6081-3(a).  The six-month extension is obtained by timely

8    submitting Form 7004, "Application for Automatic Extension of Time to File Certain

9    Business Income Tax, Information, and Other Returns," and by remitting "the amount of

10   the properly estimated unpaid tax liability on or before the date prescribed for payment."

11   Id. §§ 1.6081-3(a)(1)-(3).

12         As set forth above, on June 7, 1999, New Gaming paid $100,000.00 to the IRS

13   and submitted Form 7004, Application for Automatic Extension of Time to File

14   Corporation Income Tax Return, for the 1998 taxable year.  Freels Dep. at 41, 31; Ex. 2

15   at 2-3.  Then, on September 9, 2009, New Gaming filed Form 1120 U.S. Corporation

16   Income Tax Return for the 1998 taxable year, reporting total income of $4,446,773.00

17   and total deductions of $4,523,726.00.  Ex. 3 at 2.  New Gaming later determined that it

18   should prepare an amended income tax return for the period ending March 31, 1999.

19   Freels Dep. at 44.  CPA Sides discovered "a series of things missed in the tax return,"

20   including missing income totaling $601,127.00.  Id. at 44-45; Sides Dep. at 12.  Thus, an

21   amended corporate income tax return was prepared for New Gaming for the tax year

22   ending March 31, 1999, which listed an additional $601,127.00 in income.  Ex. 4 at 3.

23   While CPA Bauer signed this return on January 4, 2000, it was never filed with the IRS.

24   Bauer Dep. at 28-29.

25         Beginning sometime in 2002, the IRS audited New Gaming's tax return for the

26   1998 taxable year.  See Freels Dep. at 47; Sides Dep. at 20.

27   ///

28   ///

1    New Gaming ultimately agreed to the changes proposed on Form 4549-A, Income Tax

2    Examination Changes, prepared by Revenue Agent Brown.  Ex. 2, 3.  The total tax

3    agreed to was $375,571.00.  Ex. 5.

4         Then, on May 24, 2004, the IRS imposed a late filing penalty in the amount of

5    $93,892.75 pursuant to 26 U.S.C. § 6651.  Ex. 1 at 2.  Section 6651(a) provides for a

6    maximum twenty-five percent addition to tax for failure to file a federal income tax return

7    by its due date.  New Gaming paid the $93,892.75 penalty.  Pursuant to 28 U.S.C.

8    § 1346(a)(1), which permits a taxpayer to bring "a civil action against the United States

9    for the recovery of any internal-Revenue tax" that the taxpayer believes was erroneously

10   assessed, New Gaming now seeks a refund of the $93,892.75 penalty.

11        According to the United States, the IRS invalidated New Gaming's request for an

12   extension of time to file its income tax return for the period ending March 31, 1999, and

13   as a result imposed the late filing penalty.  The United States now moves for summary

14   judgment, arguing that the undisputed facts establish that New Gaming Systems'

15   estimate of the tax owed for the taxable year ending March 31, 1999, was unreasonable

16   and thus the request for extension was void ab initio, and therefore New Gaming is not

17   entitled to a refund of the $93,892.75 penalty.  Def.'s Mot. Summ. J. at 7.  New Gaming

18   opposes the motion, arguing that the estimate of tax owed was reasonable in light of the

19   information that CPA Bauer had available to him at the time New Gaming requested the

20   extension.  Pl.'s Opp'n at 12.

21        The Tax Court's decision in Crocker v. Commissioner is on point.  There, the

22   court stated: "In our view, a taxpayer should be treated as having 'properly estimated' his

23   tax liability, within the meaning of section 1.6081- 4(a)(4), Income Tax Regs., when he

24   makes a bona fide and reasonable estimate of his tax liability based on the information

25   available to him at the time he makes his request for extension."  92 T.C. 899, 908, 1989

26   WL 45940 (1989).  Thus, a taxpayer is required "to judge or determine his tax liability

27   generally, but carefully."  Id.

28   ///

1   "Furthermore, . . . to be treated as having 'properly estimated' his tax liability, . . . the

2   taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult

3   information which will enable him to make a proper estimate of his tax liability." Id.

4   "Under Crocker, . . . [t]he reasonableness of the [taxpayer's] estimate [of his tax liability]

5   is a fact determination made on a case-by-case basis." In re Kimball, 99-13592-WCH,

6   2001 WL 260078 (Bankr. D. Mass. Jan. 18, 2001) aff'd, 99-13592-WCH, 2002 WL

7   441986 (D. Mass. Feb. 27, 2002) (citing Crocker, 92 T.C. at 908).

8       Accordingly, the reasonableness of New Gaming's estimate of the $100,000 tax

9   liability is a genuine issue of material fact that the Court may not resolve on a motion for

10  summary judgment. See Act Up!/Portland v. Bagley, 988 F.2d 868, 874 (9th Cir. 1993)

11  (Norris, J., dissenting) ("[O]ur common law tradition . . . since time immemorial has

12  considered the reasonableness of human conduct to be a quintessential jury question.").

13  The United States' motion for summary judgment is therefore denied.

14

15      **C.      New Gaming's Motion for Summary Judgment**

16

17      New Gaming moves for summary judgment on the ground that, regardless of

18  whether its estimated tax included with its request for extension was reasonable, New

19  Gaming is entitled to summary judgment because its failure to timely file was due to

20  reasonable cause and not due to willful neglect.

21      If a taxpayer's tax liability was not properly estimated, then the extensions of time

22  to file are invalid and petitioners' returns are delinquent. Crocker, 92 T.C. at 910. The

23  Internal Revenue Code imposes mandatory penalties for failure to file returns by the

24  date prescribed unless the taxpayer can demonstrate that such failure was due to

25  "reasonable cause and not due to willful neglect." 26 U.S.C. §§ 6651(a)(1)-(2), 6656(a).

26  Under § 6651(a)(1), the taxpayer bears the "heavy burden of proving both (1) that the

27  failure did not result from 'willful neglect' and (2) that the failure was 'due to reasonable

28  cause.'" United States v. Boyle, 469 U.S. 241, 245 (1985).

1    The Supreme Court has described willful neglect as a "conscious, intentional

2    failure or reckless indifference."  Boyle, 469 U.S. at 245.  The treasury regulation

3    interpreting the "reasonable cause" provision of § 6651 states:

4    If the taxpayer exercised ordinary business care and
     prudence and was nevertheless unable to file the return
5    within the prescribed time, then the delay is due to a
     reasonable cause.  A failure to pay will be considered to be
6    due to reasonable cause to the extent that the taxpayer has
     made a satisfactory showing that he exercised ordinary
7    business care and prudence in providing for payment of his
     tax liability and was nevertheless either unable to pay the tax
8    or would suffer an undue hardship (as described in § 1.6161–
     1(b) of this chapter) if he paid on the due date.
9

10   26 C.F.R. § 301.6651–1(c)(1).  The Regulation also provides that, in making a

11   reasonable cause determination, "consideration will be given to . . . the amount and

12   nature of the taxpayer's expenditures in light of the income . . . he could, at the time of

13   such expenditures, reasonably expect to receive prior to the date prescribed for the

14   payment of the tax."  26 C.F.R. § 301.6651-1(c)(1).

15       Here, New Gaming argues it is entitled to summary judgment on the ground that

16   even if the $100,000 estimate of tax liability was improper, the undisputed facts establish

17   that New Gaming reasonably relied on the advice of CPA Bauer, and thus New

18   Gaming's failure to timely file the return was due to reasonable cause and not due to

19   willful neglect.  The United States contends that New Gaming's motion for summary

20   judgment is at variance with Plaintiff's position before IRS Appeals, and thus New

21   Gaming is barred from recovery on this ground.  Thus, before turning to the merits of

22   New Gaming's motion, the Court must consider whether it has jurisdiction over the

23   reasonable cause issue.

24

25       **1.    Jurisdiction**

26

27       The Regulations require a taxpayer filing a claim for refund with the IRS to specify

28   each ground on which the claim for refund is based.

16

1    26 C.F.R. § 301.6402–2(b)(1) ("The claim must set forth in detail each ground upon

2    which a credit or refund is claimed and facts sufficient to apprise the Commissioner of

3    the exact basis thereof.")  "There are two reasons for these requirements: to prevent

4    surprise, and to give the IRS adequate notice of the claim and its underlying facts so that

5    it can make an administrative investigation and determination regarding the claim."

6    Boyd v. United States, 762 F.2d 1369, 1371 (9th Cir. 1985) (citing Burlington N. Inc. v.

7    United States, 684 F.2d 866, 868 (Fed. Cl. 1982)).  Compliance with the specificity

8    requirements of § 301.6402–2(b)(1) is a prerequisite to subject matter jurisdiction over a

9    claim for a refund.  Id.; Quarty v. United States, 170 F.3d 961, 972-73 (9th Cir. 1999);

10   Bear Valley Mut. Water Co. v. Riddell, 493 F.2d 948, 950-51 (9th Cir. 1974).  Thus, a

11   taxpayer cannot recover in a suit for refund on any ground that is different from that set

12   forth in its underlying claim for refund.  Quarty, 170 F.3d at 972-73 (citing Bear Valley,

13   493 F.2d at 950-51).  "Although courts have not required taxpayers to provide detailed

14   explanations of their legal theories, or to develop full factual backgrounds in their refund

15   claims, the IRS is entitled to take the refund claim at face value and examine only the

16   points to which it directs attention."  Boyd, 762 F.2d at 1371-72 (internal citations

17   omitted).  "If the claim on its face does not call for investigation of a question, the

18   taxpayer may not later raise that question in a refund suit."  Id. at 1372.

19        New Gaming's claim for refund states: "The taxpayer is protesting the imposition

20   of [the $93,892.75] delinquency penalty. . . .  The taxpayer's position is that the penalty

21   in [sic] imposed improperly, it should be abated and refunded to the taxpayer with all

22   accumulated interest."  (ECF No. 33-2 at 16.)  Although this claim for refund does not

23   provide a detailed explanation of New Gaming's legal theory regarding reasonable

24   cause, nor does it develop a full factual background for this claim, it does clearly state

25   New Gaming seeks a refund for the delinquency penalty which New Gaming believes

26   was improperly imposed.  See Boyd, 762 F.2d at 1371.  As such, the claim necessarily

27   calls for an investigation into whether New Gaming's failure to file returns by the date

28   prescribed was due to "reasonable cause and not due to willful neglect."

1  26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656(a).  By arguing that the refund was improperly

2  imposed, New Gaming put the IRS on notice that willful neglect and reasonable cause

3  were issues to be considered, as a taxpayer seeking to "escape the [late-filing] penalty,

4  the taxpayer bears the heavy burden of proving both (1) that the failure did not result

5  from 'willful neglect' and (2) that the failure was 'due to reasonable cause.'"  Boyle,

6  469 U.S. at 245.  Thus, a reasonable IRS employee reading New Gaming's claim would

7  understand these issues were at play.

8         As in Synergy Staffing, the adequacy of New Gaming's claim

9                 stands in sharp contrast to the claim in Boyd.  Mr. Boyd, a
                  professional poker player, filed an administrative claim
10                seeking allowance of a business expense deduction for
                  "losses" incurred playing poker. In district court, however, he
11                also sought to establish the deductibility of not just his poker
                  losses, but also of his tipping expenses and expenses
12                incurred in contributing to the house take-off.  The district
                  court held that Boyd's administrative claim did not sufficiently
13                apprise the IRS that he would be claiming the right to deduct
                  tips and house take-offs, and therefore, those issues could
14                not be raised for the first time in a district court lawsuit. [The
                  Ninth Circuit] agreed. Boyd's claim directed the IRS' attention
15                only to the losses incurred while playing poker and made no
                  mention of tipping expenses and house take-offs.
16

17  Synergy Staffing, 323 F.3d at 1161 (citing Boyd, 762 F.2d at 1371).  New Gaming's

18  claim "does not suffer from that sort of infirmity."  Id.  Unlike Mr. Boyd, New Gaming does

19  not raise entirely new grounds for relief than those sought in its administrative claim.

20  See Boyd, 762 F.2d at 1371.  Rather, New Gaming seeks relief for the reason set forth,

21  albeit imprecisely, in its administrative claim.  Accordingly, the Court need not consider

22  New Gaming's waiver arguments.

23         Therefore, the Court finds that it has jurisdiction over New Gaming's claim that its

24  failure to timely file the return was due to reasonable cause and not due to willful

25  neglect.

26  ///

27  ///

28  ///

1          **2.      Reasonable Cause**

2

3          As set forth above, the Internal Revenue Code imposes mandatory penalties for

4   failure to file returns by the date prescribed unless the taxpayer can demonstrate that

5   such failure was due to "reasonable cause and not due to willful neglect."  26 U.S.C.

6   §§ 6651(a)(1)-(a)(2), 6656(a).  Under § 6651(a)(1), the taxpayer must prove "both

7   (1) that the failure did not result from 'willful neglect' and (2) that the failure was 'due to

8   reasonable cause.'"  Boyle, 469 U.S. at 245.

9          "A failure to file is due to 'reasonable cause' if the taxpayer exercised ordinary

10  business care and prudence and was, nevertheless, unable to file his return within the

11  date prescribed by law."  Crocker, 92 T.C. at 913 (citing § 301.6651-l(c)(l); Boyle,

12  469 U.S. at 246; Estate of Paxton v. Commissioner, 86 T.C. 785, 819 (1986)).  "Whether

13  the elements that constitute 'reasonable cause' are present in a given situation is a

14  question of fact, but what elements must be present to constitute 'reasonable cause' is a

15  question of law."  Boyle, 469 U.S. at 249 n.8 (citing Haywood Lumber & Mining Co. v.

16  Commissioner, 178 F.2d 769, 772 (2d Cir. 1950); Daley v. United States, 480 F. Supp.

17  808, 811 (D.N.D. 1979)); see also Coates v. Commissioner, 234 F.2d 459, 462 (8th Cir.

18  1956) ("We agree with the statement of the Tax Court that whether or not reasonable

19  cause exists for failure to file the required declaration is a question of fact to be decided

20  upon the peculiar circumstances of each case.")).  Thus, although the parties put forward

21  extensive arguments as to whether Plaintiff's reliance on Bauer's estimate of $100,000 is

22  sufficient to show "reasonable cause" within the meaning of § 6651(a)(1), whether the

23  "elements that constitute 'reasonable cause' are present" in this case is a genuinely

24  disputed factual issue that the jury must decide.  Accordingly, New Gaming's Motion for

25  Summary Judgment is denied.

26  ///

27  ///

28  ///

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.    The United States' Motion for Summary Judgment, ECF No. 24, is
      DENIED;

2.    The United States' Motion to Supplement, ECF No. 35, is GRANTED; and

3.    New Gaming Systems' Motion for Summary Judgment, ECF No. 29, is
      DENIED.

IT IS SO ORDERED.

Dated: October 24, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT